FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

2021 MAY -6  PM 4: 17

MARGARET BOTKINS, CLERK
CHEYENNE

VINCENT S. MORENO and JENIE R. MORENO,

        Plaintiffs,

vs.

EDWARD DOYLE ZIMMERMAN, M.D.,

        Defendant.

Case No.  20-CV-086

---

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO LIMIT TESTIMONY OF PLAINTIFFS' EXPERT WITNESS, DR. THOMAS NAIDICH

---

THIS MATTER is before the Court on motion by Defendant Edward Doyle Zimmerman, M.D. seeking to limit the testimony of Dr. Thomas Naidich to his opinions based on his review of the radiographic studies identified in Dr. Naidich's report,[1] which would bar any opinion testimony from Dr. Naidich regarding the specific timing of any stroke event. CM/ECF Document (Doc.) 91. Defendant argues the opinion concerning any specific timing was not based on medical records or depositions, but rather it was based on a timeline that Dr. Naidich received from Plaintiff's attorney. Defendant argues that an

---

[1] Dr. Naidich testified that the radiologic evidence would only allow him to opine that (Doc. 91-1, p. 8):

   1.  The embolic event involving the right cerebellum of Plaintiff Vincent Moreno's brain occurred between 10:53 a.m. on May 9, 2018 and 10:53 a.m. on May 13, 2018 (Doc. 91-1, p. 6); and

   2.  The embolic event involving the left cerebellum of Moreno's brain occurred between 10:53 a.m. on May 13, 2018 and 4:53 a.m. on May 16, 2018 (Doc. 91-1, p. 10).

attorney's timeline is inadmissible hearsay of an advocate. Further, Defendant argues the timeline was not produced prior to Dr. Naidich's testimony, and reliance on an attorney's timeline would be unnecessary as Dr. Naidich had records and depositions for review. However, Dr. Naidich did not review that information, explaining, "[i]t is not the radiologist's standard practice to go review the medical records of the patients. We always are provided with condensed histories to help us interpret the imaging studies. I viewed these as defined facts." Doc. 91-1, p. 14.

Plaintiffs oppose Defendant's motion arguing the factual summaries prepared by counsel and relied upon by Dr. Naidich were sent by letter dated April 6, 2021, and the Court can reach its own conclusion as to whether the emails contain objectively factual data. Plaintiffs argue Dr. Naidich is eminently qualified and that his opinions are based on factual information of a type on which qualified neuroradiologists regularly rely in making diagnoses of neurological abnormalities.

<u>Applicable Legal Standards</u>

When it comes to the admissibility of expert evidence, the Court maintains the role of gatekeeper. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). In that role, the Court must adhere to Federal Rule of Evidence 702, which demands the assessment of "proffered expert testimony to ensure it is both relevant and reliable." *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012). To do this, "the district court generally must first determine whether the expert is qualified ...." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). This requires the district court to determine whether the expert's proffered testimony – whether it concerns scientific,

technical, or other specialized knowledge – has "a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

To determine whether expert testimony is admissible requires a trial court to examine "whether the reasoning or methodology underlying the testimony is scientifically valid…" *Id.* at 592-93.   In order to establish an expert's testimony as reliable, "[t]he plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community.   Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 784 (10th Cir. 1999).   The reliability inquiry, however, is fact- and case-specific: no one factor is dispositive or always applicable, and the goal remains "ensuring that an expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Bitler*, 400 F.3d at 1233 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

"Although a district court has discretion in how it performs its gatekeeping function, 'when faced with a party's objection, [the court] must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.'" *Avitia-Guillen*, 680 F.3d at 1257 (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000)). "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Nacchio*, 555 F.3d at 1241.

## Discussion

There is no issue concerning Dr. Naidich's qualifications as a neuroradiologist. In his deposition, he explains what he was asked to do when retained in the case. "I only accept one thing. I only accept to review the imaging provided and give my opinion as to what it shows and then discuss those findings with the attorneys who retained me to help them understand what the imaging evidence is." Doc. 91-1, pp. 2-3. The only issue arising from his report and deposition is the admissibility of testimony from Dr. Naidich as follows:

> A more precise opinion regarding timing of each of those strokes requires an analysis of the imaging data as well as the clinical circumstances evidenced from medical records, depositions, and other relevant materials. Based upon that analysis, it is my opinion that the first stroke occurred at or near the time or Mr. Moreno's attack on May 12, 2018 at approximately 4:45 p.m. It is my opinion that the second stroke occurred late on May 15, 2018 or in the early morning hours of May 16, 2018.

Doc. 48, p. 6.

This testimony or opinion is not derived from the radiologic evidence, which only supports an opinion expressing a range for the embolic events. Doc. 91-1, pp. 6 & 8.

In explaining the additional work Dr. Naidich undertook to focus the timing of the events more precisely, Dr. Naidich responded, "I am not competent to evaluate all the different specialties. I had meant by those sentences that additional information from other specialties, from clinical records, from evaluations of clinicians would be brought forward and seeing to limit within the range provided radiologically the actual times of the event." Doc. 91-1, pp. 10-12.

4

However, on further inquiry, Dr. Naidich was asked to specifically explain his opinion that the first stroke (the event involving the right cerebellum of Plaintiff Moreno's brain) occurred on May 12, 2018 at approximately 4:45 p.m. Dr. Naidich answered that he was provided a timeline of the events which he takes "for correct on factual data." *Id.* at p. 13. That timeline is recounted in the first paragraph of Dr. Naidich's expert report. *Id.*; Doc. 48, p. 6. This paragraph reads as follows:

> Mr. Moreno was examined by Dr. Zimmerman on May 12, 2018. Mr. and Mrs. Moreno are truck drivers. They were driving from Wisconsin to California to deliver a refrigerated load in Ontario, California. Mr. Moreno arrived at the emergency department of Memorial Hospital of Carbon County at approximately 6:00 p.m. after Mr. Moreno had a significant attack of nausea and vertigo while driving the truck on Interstate 80. The testimony demonstrates that the attack occurred at approximately 4:45 p.m. on May 12. The day before, he was examined in the Urgent Care Department at Lexington Regional Medical Center in Lexington, Nebraska.

Doc. 48, p. 6.

Dr. Naidich explains in his affidavit that it is a normal and routine practice on the part of neuroradiologists to obtain summary objective factual data from clinicians or others. Doc. 97-1, p. 2. While this may be true, there is no basis to conclude that it is normal or routine to obtain information about the precise time based on the work product of an attorney advocate. Further, it is unclear from Dr. Naidich's expert report, deposition and affidavit how he can conclude anything about the specific time of any stroke event suffered by Plaintiff Moreno, especially given that he was hired to review imaging and opine as to what the imaging shows. Doc. 91-1, pp. 2-3. It is undisputed that the imaging does not establish any specific time for any stroke event. Doc. 91-1, pp. 6 & 8.

5

For these reasons Defendant's motion is granted in part. This order does not preclude Plaintiffs from presenting a hypothetical to Dr. Naidich during the expert's testimony at trial in an attempt to narrow the range as to when the actual event(s) occurred. However, the data forming the hypothetical must (1) clearly identify the facts or data as such that experts in Dr. Naidich's particular field would reasonably rely on; and (2) be sufficient to allow Dr. Naidich to express an opinion, supported by his qualifications, which might refine when, radiologically, the actual stroke event occurred. [2]

Before closing the Court would also note that the briefing for this motion is unnecessarily contentious and uncivil. The attorneys in this case are experienced and should fully understand that the standards of attorney conduct apply not just to court appearances, but also court filings. *See* Local Rule 84.1. The Court expects counsel to treat each other with courtesy and civility, and conduct themselves in a professional manner at all times.

IT IS THEREFORE HEREBY ORDERED that Defendant's motion to limit the testimony of Dr. Thomas Naidich to his opinions based on his review of the radiographic studies identified in Dr. Naidich's report is GRANTED IN PART AND DENIED IN PART consistent with this order.

---

[2] Dr. Naidich discussed in his deposition "a radiologically potential range the actual event occurred." Doc. 91-1, p. 8. An expert opinion expressed in terms of "potentiality" may be problematic. While the Court understands that there is no mechanical rule of law as to what term is employed, an expert's testimony must "judicially impress that the opinion expressed represents [the expert's] professional judgment as to the most likely one among the [other possibilities] involved...". *Vassos v. Roussalis*, 658 P.2d 1284, 1290-91 (Wyo. 1983) (quoting *Norland v. Washington General Hospital*, 461 F.2d 694, 697 (8th Cir. 1972)).

Dated this 6th day of May, 2021.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE